IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| KEINALD V. PARNELL, | |
| Petitioner, | **8:19CV32** |
| vs. | |
| SCOTT R. FRAKES, | **MEMORANDUM AND ORDER** |
| Respondent. | |

This matter is before the court on Keinald V. Parnell's ("Petitioner" or "Parnell") Petition for Writ of Habeas Corpus. (Filing No. 1.) For the reasons that follow, Petitioner's habeas petition is denied and dismissed with prejudice.

## I. CLAIMS

Summarized and condensed, and as set forth in the court's initial review order (filing no. 6), Parnell asserted the following claims that were potentially cognizable in this court:

Claim One: Petitioner's convictions for false imprisonment and terroristic threats are unconstitutional because there is insufficient evidence to support the convictions.

Claim Two: Petitioner was denied effective assistance of counsel because trial counsel (1) waived Petitioner's right to be present at arraignment without consulting Petitioner; (2) failed to file a motion to quash or dismiss the charges against Petitioner because Petitioner was charged and held for eight months under an incorrect name; (3) failed to assert Petitioner's speedy trial rights; (4) failed to file any motion regarding the trial court judge holding a second preliminary hearing; (5) failed to challenge the admission

of the "altered" knife evidence; (6) failed to move to suppress the gun found eleven days after Petitioner was in jail; (7) failed to investigate and subpoena phone records and text messages to prove collusion between the victim and his mother; and (8) failed to call Officer Passo and Officer Joe Choquette to testify at trial.

Claim Three:       Petitioner was denied effective assistance of counsel because appellate counsel (1) failed to consult or communicate with Petitioner regarding his appeal *and* (2) failed to raise on appeal (a) "the confrontation clause pertaining to . . . OFFICER ANDREW PASSO" ([filing no. 1 at CM/ECF pp. 14](#)–15); (b) judicial misconduct because the trial court judge held a second preliminary hearing to add three weapons charges; (c) prosecutorial misconduct because the State allowed evidence planted by the victim, failed to call key witnesses, and used perjured testimony; (d) the fact that Petitioner was incarcerated for eight months prior to trial under his son's name; (e) that Officer Choquette was never called to testify; (f) error in admission of the gun evidence because Petitioner did not live or ever reside where the weapon was found; and (g) error in jury instructions No. 4 and No. 7 (*see [id.](#)* at [CM/ECF pp. 18](#), [54](#)–55).

Claim Four:        Petitioner's convictions were obtained through prosecutorial misconduct because the State (1) failed to call Officer Andrew Passo who was the first responding officer; (2) allowed planted evidence to be presented against Petitioner; (3) failed to do anything to rectify the victim's perjured testimony; and (4) failed to call Officer Choquette regarding D.N.A. evidence.

([Filing No. 6 at CM/ECF pp. 1-2](#) (alterations to original).)[1]

---

[1] The court noted that Parnell's claim of "actual innocence" was not an independent claim for relief; rather, the actual innocence showing excuses procedural default. ([Filing No. 6 at CM/ECF p.3](#) n.1 (citations omitted).)

## II.  BACKGROUND

### A.  Convictions and Sentences

The court states the facts as they were recited by the Nebraska Court of Appeals in *State v. Parnell*, No. A-16-354, 2016 WL 7209829 (Neb. Ct. App. Dec. 13, 2016) (filing no. 10-3). *See Bucklew v. Luebbers*, 436 F.3d 1010, 1013 (8th Cir. 2006) (utilizing state court's recitation of facts on review of federal habeas petition).

Parnell was charged with burglary, terroristic threats, first degree false imprisonment, two counts of use of a firearm to commit a felony, possession of a firearm by a prohibited person, and misdemeanor violation of a protection order. The State also alleged that Parnell was a habitual criminal. Parnell pled guilty to the violation of a protection order and proceeded to trial on the remaining six charges.

The evidence at trial showed that in the early morning hours of May 9, 2015, Parnell entered the house of his ex-girlfriend, Randie Frederick. Randie was not home, but her adult son, Dominic Frederick, was asleep in the living room. Dominic's two children, who also lived in the house, were not at home that night. Parnell brandished a knife and, Dominic later claimed, a gun, and forced Dominic to remain in the living room of the house until the morning hours. In the morning, Dominic's uncle came by the house after receiving no answer to phone calls to Dominic's cellphone. The uncle saw Dominic sitting on a couch inside the house and saw another figure in the house, but left without speaking to Dominic. Shortly thereafter, the Fredericks' next door neighbor saw a broken window on the Fredericks' house and called the police. Following the police's arrival, Dominic was able to safely exit the house and an hours-long standoff between Parnell and police ensued. Parnell was eventually apprehended in the attic of the house and arrested.

On the day of Parnell's arrest, police collected a knife and a glove from the Fredericks' home. Two days later, Dominic summoned the police back to his house to retrieve a second knife he claimed to have found in the attic. Eleven days later,

police returned to the house with special equipment and located a gun in the basement drywall.

The jury found Parnell guilty of burglary, false imprisonment, and terroristic threats, and acquitted him of the three firearms charges.

The court ordered a presentence investigation and conducted an enhancement hearing. The court found Parnell to be a habitual criminal and sentenced him to 30 to 30 years for burglary, 30 to 30 years for terroristic threats, 30 to 30 years for false imprisonment, and one year for violation of a protection order. The court ordered that all four sentences be served concurrently and awarded Parnell credit for 327 days served.

## B. Direct Appeal

Parnell appealed his convictions and sentences to the Nebraska Court of Appeals. (Filing No. 10-1.) Parnell was represented both at trial and on direct appeal by the same attorney. Parnell argued that there was insufficient evidence to support his convictions for burglary, terroristic threats, and false imprisonment. (Filing No. 10-6 at CM/ECF p. 10.) He also alleged that he received excessive sentences for these three convictions. (Filing No. 10-6 at CM/ECF p. 10.)

In a memorandum web opinion dated December 13, 2016, the Nebraska Court of Appeals affirmed Parnell's convictions and sentences, rejecting his claims on the merits. (Filing No. 10-3.) Parnell filed a petition for further review with the Nebraska Supreme Court. (Filing No. 10-10.) Parnell raised several claims, including, as relevant here, that there was insufficient evidence to support his convictions for burglary, terroristic threats, and false imprisonment (Filing No. 10-10 at CM/ECF pp. 3, 5-6.) The Nebraska Supreme Court denied Parnell's petition for further review on February 14, 2017. (Filing No. 10-1 at CM/ECF p. 4.)

## C. Postconviction Action

Parnell filed a pro se verified motion for postconviction relief on June 8, 2017. (Filing No. 15-2 at CM/ECF pp. 2-22.) Parnell alleged various claims of ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct, trial court error, and actual innocence. (Filing No. 15-2 at CM/ECF pp. 3-21.) In a written order, the state district court denied postconviction relief without an evidentiary hearing. (Filing No. 15-2 at CM/ECF pp. 53-62.)

Parnell appealed to the Nebraska Court of Appeals, arguing that the state district court erred in failing to (1) conduct an evidentiary hearing on the allegations contained in his motion for postconviction relief, (2) address "the Confrontation Clause, Compulsory process and the Fourth Amendment," (3) address "the constitution [sic] right to a [s]peed[y] [t]rial violation in violation to due [p]rocess," (4) hold an evidentiary hearing on his claim that his counsel was ineffective because she had a conflict of interest, and (5) hold an evidentiary hearing on his claims of actual innocence, ineffective assistance of trial counsel, ineffective assistance of appellate counsel, prosecutorial misconduct, and misconduct by the trial judge. (Filing No. 10-11 at CM/ECF pp. 2-3.)

The Nebraska Court of Appeals affirmed the judgment of the district court in a memorandum web opinion dated October 16, 2018. (Filing No. 10-4.) The court rejected on the merits Parnell's claims that trial counsel was ineffective for failing (1) to call Anthony Warner, Danny Barfield, Lisa Estrada, and Officer Andrew Passo; (2) "to even object to the illegal search and to move to suppress the knife that was found by the victim . . . in the attic"; and (3) to properly protect his speedy trial rights. (Filing No. 10-4 at CM/ECF pp. 5-6, 7, 8-10.) The court did not reach the merits of the remainder of the ineffective assistance of counsel claims because Parnell either (1) did not specifically assign and argue the claims on appeal, (2) did not raise the claims in the postconviction motion, or (3) alleged only conclusions of fact and law in his postconviction motion which did not warrant an evidentiary hearing under state law. (Filing No. 10-4 at CM/ECF pp. 4-5, 6, 7, 10-12.) The court

concluded that Parnell's claims of prosecutorial misconduct and trial judge misconduct were procedurally barred because they could have been brought on direct appeal. (Filing No. 10-4 at CM/ECF p. 12.) The court also rejected Parnell's claim that he was prejudiced by an error in jury Instructions Nos. 4 and 7 regarding use of a deadly weapon (firearm) to commit a felony. (Filing No. 10-4 at CM/ECF pp. 12-13.) In addition, the court found that Parnell's insufficiency of the evidence argument was procedurally barred as that claim was rejected on direct appeal. (Filing No. 10-4 at CM/ECF p. 13.) Finally, the court concluded that Parnell did not meet "the extraordinarily high threshold of alleging facts sufficient to show his actual innocence." (Filing No. 10-4 at CM/ECF p. 13.)

Parnell filed a petition for further review with the Nebraska Supreme Court. (Filing No. 10-13.) Parnell raised the following claims: (1) trial counsel was ineffective for failing to call Anthony Warner, Danny Barfield, Lisa Estrada, Officer Andrew Passo, and Joe Choquette; (2) trial counsel was ineffective for failing to file a motion to suppress the weapons found at the victim's residence, arguing that the State could not prove possession of a firearm because he did not live there; and (3) he is actually innocent. (Filing No. 10-13 at CM/ECF pp. 3-6.) The Nebraska Supreme Court denied Parnell's petition for further review and issued its mandate on December 21, 2018. (Filing No. 10-2 at CM/ECF p. 4.)

**D. Habeas Petition**

Parnell timely filed his Petition in this court on January 24, 2019. (Filing No. 1.) In response to the Petition, Respondent filed an Answer (filing no. 17), a Brief (filing no. 18), and the relevant state court records (filing no. 10; filing no. 15). Respondent argues that Parnell's claims are either procedurally defaulted or without merit. Parnell did not file a brief in response to Respondent's Answer and Brief. Respondent filed a Notice of Submission indicating that he would not be filing a reply brief as Parnell did not file a response brief. (Filing No. 19.) This matter is now fully submitted for disposition.

### III. OVERVIEW OF APPLICABLE LAW

Various strands of federal habeas law intertwine in this case. They are (1) exhaustion and procedural default; (2) the deference that is owed to the state courts when a federal court reviews the factual or legal conclusions set forth in an opinion of a state court; and (3) the standard for evaluating a claim of ineffective assistance of counsel. The court elaborates upon those concepts next so that it may apply them later in a summary fashion as it reviews Parnell's claims.

### A.  Exhaustion and Procedural Default

As set forth in 28 U.S.C. § 2254:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the habeas exhaustion requirement as follows:

Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process.

*O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

A state prisoner must therefore present the substance of each federal constitutional claim to the state courts before seeking federal habeas corpus relief. In Nebraska, "one complete round" ordinarily means that each § 2254 claim must have been presented to the trial court, and then in an appeal to either the Nebraska Supreme Court directly[2] or to the Nebraska Court of Appeals, and then in a petition for further review to the Nebraska Supreme Court if the Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

"In order to fairly present a federal claim to the state courts, the petitioner must have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (internal citation and quotation omitted). Although the language need not be identical, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999). In contrast, "[a] claim has been fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts which he is attempting to raise in his federal habeas petition." *Wemark v. Iowa*, 322 F.3d 1018, 1021 (8th Cir. 2003) (citation omitted).

Where "no state court remedy is available for the unexhausted claim—that is, if resort to the state courts would be futile—then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause

---

[2] Where a life sentence has been imposed in a criminal case, the appeal goes directly to the Nebraska Supreme Court. Neb. Rev. Stat. § 24-1106 (West).

and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

To be precise, a federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Also, a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims on the merits notwithstanding the existence of a procedural bar to relief. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). To invoke the actual innocence exception, a petitioner "must show that in light of all the evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *Jennings v. United States*, 696 F.3d 759, 764-65 (8th Cir. 2012) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, (1995)). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Id.* (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)).

## B. Nebraska Law Relevant to Procedural Default

Under Nebraska law, you don't get two bites of the postconviction apple; that is, "[a]n appellate court will not entertain a successive motion for postconviction relief unless the motion affirmatively shows on its face that the basis relied upon for relief was not available at the time the movant filed the prior motion." *State v. Ortiz*, 670 N.W.2d 788, 792 (Neb. 2003). Additionally, "[a] motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal." *Hall v. State*, 646 N.W.2d 572, 579 (Neb. 2002). *See also State v. Thorpe*, 858 N.W.2d 880, 887 (Neb. 2015) ("A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.")

Moreover, a person seeking postconviction relief must present his or her claim to the district court or the Nebraska appellate courts will not consider the claim on appeal. *State v. Deckard*, 722 N.W.2d 55, 63 (Neb. 2006) (denying postconviction relief in a murder case and stating: "An appellate court will not consider as an assignment of error a question not presented to the district court for disposition through a defendant's motion for postconviction relief.") Similarly, on appeal, the appealing party must both assign the specific error and specifically argue that error in the brief. Otherwise the claim is defaulted under Nebraska law. *State v. Henry*, 875 N.W.2d 374, 407 (Neb. 2016) (stating an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court).

Note also that Nebraska has a statute of limitations for bringing postconviction actions that is similar to federal law. It reads:

> (4) A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:
>
> > (a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;
> >
> > (b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;
> >
> > (c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;
> >
> > (d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly

recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.

Neb. Rev. Stat. § 29-3001(4) (West).

## C.  Deferential Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts. *Id.* at 405-06. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). Additionally, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.*

However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA [Antiterrorism and Effective Death Penalty Act] standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance—combined with its express determination that the ineffective-assistance claim as a whole lacked merit—plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper*, 631 F.3d 487, 496-97 (8th Cir. 2011) (internal quotation marks and citations omitted).

The court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and "apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

**D. The Especially Deferential *Strickland* Standard**

When a petitioner asserts an ineffective assistance of counsel claim, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), must be applied. The standard is very hard for offenders to satisfy.

*Strickland* requires that the petitioner demonstrate both that his counsel's performance was deficient, and that such deficient performance prejudiced the petitioner's defense. *Id.* at 687. The first prong of the *Strickland* test requires that the petitioner demonstrate that his attorney failed to provide reasonably effective assistance. *Id.* at 687-88. In conducting such a review, the courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The second prong requires the petitioner to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Further, as set forth in *Strickland*, counsel's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" in a later habeas corpus action. *Id.* at 690.

Additionally, the Supreme Court has emphasized that the deference due the state courts applies with special vigor to decisions involving ineffective assistance of counsel claims. *Knowles v. Mirzayance*, 556 U.S. 111 (2009). In *Knowles*, the Justices stressed that under the *Strickland* standard, the state courts have a great deal of "latitude" and "leeway," which presents a "substantially higher threshold" for a federal habeas petitioner to overcome. As stated in *Knowles*:

> The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold. And, because the *Strickland* standard is a general standard, a state court

has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Id.* at 123 (internal quotation marks and citations omitted).

## IV. DISCUSSION

## A. Claim One

In Claim One, Parnell contends that his convictions for false imprisonment and terroristic threats are unconstitutional because there is insufficient evidence to support the convictions. The Nebraska Court of Appeals considered and rejected this claim on direct appeal. The court wrote:

> With respect to his convictions for terroristic threats and false imprisonment, Parnell argues that the State's main witness, Dominic, was unreliable and that his testimony was therefore inadequate to support the jury's guilty verdicts. . . . We find no merit to . . . Parnell's assertion[] regarding the sufficiency of the evidence.

> In reviewing a sufficiency of the evidence claim, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McClain*, 285 Neb. 537, 827 N.W.2d 814 (2013).

> . . . .

> Parnell argues that there was insufficient evidence to support[] his convictions for terroristic threats and false imprisonment because Dominic's testimony was not believable. Parnell points to numerous inconsistencies in Dominic's testimony including whether Dominic arranged to have his children out of the house the night of the incident or whether his mother-in-law volunteered to take them, whether he went out with friends or stayed in, how Dominic was able to see his uncle through a window while sitting on the couch, whether Parnell held the knife the entire time or put it in his pocket at times, whether Dominic remained seated the entire time or walked around, which of

the two knives police seized was the one Parnell used, when Dominic's children returned home after the incident, and whether Dominic was frightened during the incident or not. We find no merit to this assignment of error.

The State presented the testimony of numerous witnesses, including several police officers, at the trial. The officers described the hours-long standoff with Parnell and how they eventually entered the house and arrested him, using flash bangs, a PA system, a police robot, a police dog, and a SWAT team. The remainder of the officers' testimony related to locating the two knives and gun in the Fredericks' home in the hours and days after the standoff.

Officer RoseMary Henn testified that she transported Dominic for a formal police interview after the standoff was over. After Dominic's interview, Henn drove Dominic back to his house. Upon entering the house, Dominic informed Henn that a flip knife and a glove on the coffee table were from the incident. Officer Henn seized the items as evidence. Officer Henn then helped search the attic but did not locate any additional evidence.

Officer Derek Vieth testified that on May 11, 2015, two days after the incident with Parnell, Dominic summoned police back to his house. When Officer Vieth arrived, Dominic informed him that he had found another knife, this time in the attic. Dominic had removed the knife from the attic and placed it on top of his kitchen cabinet. Officer Vieth summoned the crime lab to collect the knife.

Todd Morgan, a crime lab technician, testified that he collected and tested the knife Officer Vieth had located on top of the cabinet. According to Morgan, no latent prints were found on the knife.

Officer Charles Moffitt testified that on May 20, 2015, he returned to the Fredericks' home to assist in locating a weapon that was believed to still be in the house. Moffitt used an optic camera with a scope to locate a gun in a hole in the basement drywall. Moffitt testified that someone had directed his attention to the drywall, but that he could not remember who.

Kimberly Van Den Akker, a crime lab technician, testified that she collected and tested the firearm Moffitt had located in the basement. According to Van Den Akker, no fingerprints were found on the gun. The parties stipulated that DNA located on the gun's magazine excluded Parnell as a contributor, but DNA located on the gun could not exclude Parnell as a contributor.

The State also presented the testimony of Kevin Watkins, Dominic's uncle. Watkins testified that on the night of May 8, 2015, he was supposed to spend time with Dominic but ended up falling asleep early. On the morning of May 9, Watkins tried calling Dominic around 8 a.m. but received no response. Watkins then went to Dominic's house around 9 a.m. Watkins knocked on two doors, and was eventually able to see Dominic inside through a window. Watkins made eye contact with Dominic and testified that Dominic "didn't look normal." Watkins also saw another person in the house, though he could only see the back of the person's head. Watkins eventually left the house, figuring that Dominic was upset with him for not spending time with him the night before.

The State also called Jay Julin, the neighbor who called the police. Julin testified that he is the neighbor and landlord to the Fredericks. On the morning of May 9, 2015, he was mowing the lawn and saw somebody (presumably Watkins) looking into the windows of the house, which he found suspicious. Julin also noticed a broken window on the Fredericks' house. Julin tried to call Dominic but received no response. Julin then called the police. Julin testified that when they arrived, officers tried knocking on the door but received no response. Eventually, Dominic came to the door and officers pulled him outside. Julin described Dominic as looking "[v]ery anxious" upon his removal from the house.

The State's key witness was Dominic. Dominic testified that he lives at the house with his mother, Randie, and his two children. According to Dominic, Randie was out of town the weekend of May 9, 2015, on business and Dominic had his mother-in-law watch his children. Dominic had plans to hang out with his Uncle Kevin and a friend and go to a party on the night of May 8. Dominic testified that he ended up hanging out with his friend and the pair just stayed in at Dominic's

house and "had a couple shooters, smoked a blunt." Dominic testified that he fell asleep in the living room around 11:30 or midnight.

According to Dominic, he awoke around 3 a.m. to use the bathroom. In the corner of the room by the bathroom, Dominic saw a silhouette. Dominic testified that at first he thought it was a friend playing a joke on him, but then he saw the person was bald and knew it must be Parnell. Parnell had a gun in his hand and made Dominic return to the couch. According to Dominic, Parnell said that he wanted to talk to Randie and that they would "wait for your mom." Dominic testified that Parnell also had a 2- to 3-inch pocket knife with a blade that folded out in his other hand. Dominic testified that the pair remained in the living room until the next morning when the police arrived. According to Dominic, he and Parnell discussed their problems with women during this time. Dominic testified that Parnell did not set the gun down, and had the knife in his other hand. Dominic then testified that at one point, Parnell got them beers from the fridge and also let Dominic use the bathroom.

Dominic testified that in the morning, his uncle knocked on the door. Parnell became agitated when Watkins knocked, and he threatened to "pop" Dominic and "put one in [Watkins'] dome" if Dominic let him in. Dominic testified that he made eye contact with his uncle through the window, but did not say anything because he wanted Watkins to remain safely outside. Dominic testified that the police arrived a short while later and began knocking on the door. Dominic described Parnell as "unstable" once the police arrived, including walking around the house shutting all the blinds. Dominic testified that he offered to tell the police that there was no problem, and Parnell let him exit the house. Dominic testified that the police pulled him to the ground once he exited the house.

Dominic testified that once the standoff with Parnell was over, Dominic was transported for a formal police interview. Dominic testified that after the interview, he and an officer returned to his house to search for the weapons. Dominic testified that he found a glove in his daughter's room and a knife in the front room in "a mixture of everything" because the police had "trashed" the house during their encounter with Parnell. Dominic testified that the knife he found that first day was not the same

knife Parnell used during the incident because the knife Parnell had wielded was a different color.

Dominic testified that in the days after the event, he kept searching the house for the missing weapons. He testified that he found a knife in the attic insulation that he recognized as the knife Parnell had used. Dominic also identified the gun found in the basement drywall as being the same firearm Parnell had used.

On cross-examination, Parnell's attorney used a prior deposition of Dominic and his police interview to impeach his trial testimony. In particular, Dominic had stated in the deposition that his mother-in-law had "mysteriously" offered to take his kids on the weekend of May 9, not that he asked her to watch the kids. Dominic had also stated at one point that his children did not come home until after the gun was found, but later said they returned home a few days after the incident, after the second knife was found, but before the gun was found. Additionally, Dominic told the interviewing detective that he had gone out with his friends earlier in the night on May 8 rather than staying at home the entire time. Parnell's attorney also questioned how Parnell could have held a gun and a knife during the entire incident while also retrieving and drinking beers. Dominic responded that Parnell put the knife in his pocket at times and explained that he was confused by the attorney's question because she had not been asking about Parnell retrieving the beers at the time.

Parnell's attorney also revealed that Dominic had earlier been inconsistent about which of the two knives had been the one Parnell had used. Additionally, Dominic had earlier described Parnell as calm, not violent, and had stated that he sympathized with Parnell. Lastly, Dominic admitted that he had not remained seated on the couch during the entire encounter, but had gotten up and moved around at times.

It is true that Parnell's attorney impeached Dominic's testimony and revealed several inconsistencies between his earlier statements and trial testimony. However, many of these inconsistencies were on relatively minor details, such as why Dominic's children were not at home, whether Dominic went out with friends or stayed in before Parnell's arrival, and when Dominic's children returned to the home. Dominic's testimony was consistent in identifying Parnell as the person who

entered the house in the middle of the night, brandished a knife, and refused to let Dominic leave. The jury saw Dominic testify and apparently determined that, despite the inconsistencies, his overall story of Parnell holding Dominic at knifepoint was credible. Parnell's argument asking us to find insufficient evidence based on allegedly incredible testimony contradicts our standard of review. In reviewing a sufficiency of the evidence claim, we do not pass on the credibility of the witnesses—that is for the trier of fact. *State v. Draper*, 295 Neb. 88, 886 N.W.2d 266 (2016).

Parnell also points out that the jury apparently did not believe Dominic's testimony that Parnell had a gun because it acquitted him of the three firearms-related charges. However, this does not mean that there was insufficient evidence by which the jury could have found Parnell guilty of the remaining three charges based on the theory that Parnell had a knife. Construing the evidence in the light most favorable to the State, a rational jury could have found Parnell guilty of terroristic threats and false imprisonment.

(Filing No. 10-3 at CM/ECF pp. 3-6.)

Having reviewed the trial transcripts in Parnell's criminal trial, the court finds that the Nebraska Court of Appeals' adjudication of Claim One did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The Nebraska Court of Appeals admittedly did not cite *Jackson v. Virginia*, 443 U.S. 307 (1979), the seminal United States Supreme Court decision on sufficiency of the evidence, but "[a] reasonable application of established federal law 'does not require citation of [United States Supreme Court] cases—indeed, it does not even require *awareness* of [the] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) (quoting *Early v. Packer*, 537 U.S. 3, 8, (2002)) (emphasis in original). The Nebraska Court of Appeals did, however, correctly apply the essence of *Jackson v. Virginia* to the question of whether the evidence was sufficient to support Parnell's convictions, and the Nebraska Court of Appeals did so in an objectively reasonable manner; neither the reasoning nor the result contradicts *Jackson v. Virginia*.

Parnell has also not shown that the adjudication of the claim by the Nebraska Court of Appeals resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The Nebraska Court of Appeals found that despite the inconsistencies in Dominic's testimony on minor details, his testimony was consistent in identifying Parnell as the person who entered the house in the middle of the night, brandished a knife, held Dominic at knifepoint, and refused to let him leave, facts confirmed by the trial transcripts. Thus, the Nebraska Court of Appeals could and did find the evidence sufficient to support Parnell's convictions.

Given the foregoing, the courts finds that Parnell cannot overcome the barrier posed by 28 U.S.C. 2254(d). There is no merit to his claim that the evidence was insufficient to support his convictions for false imprisonment and terroristic threats.

## B. Claim Two

Claim Two consists of multiple subparts alleging ineffective assistance of trial counsel. At the outset, the court notes that in its opinion affirming the state district court's denial of postconviction relief, the Nebraska Court of Appeals set forth the proper legal standard under *Strickland*. (Filing No. 10-4 at CM/ECF p. 4.)

### 1. Subparts (1), (2), (3), (4), (6), and (7)

Parnell did not raise subparts (1), (2), (3), (4), and (7) in his postconviction appeal petition for further review to the Nebraska Supreme Court. (*See* Filing No. 10-13.) With respect to subpart (6), Parnell appears to have raised it in his postconviction motion (filing no. 15-2 at 5, ¶ 10) and his postconviction appeal petition for further review to the Nebraska Supreme Court (filing no. 10-13 at CM/ECF p. 5) but did not specifically assign and argue it in his postconviction appeal to the Nebraska Court of Appeals (filing no. 10-11). Thus, Parnell did not present subparts (1), (2), (3), (4), (6), and (7) in one complete round in Nebraska's state courts and they are procedurally defaulted. Parnell cannot raise these issues in

a successive postconviction motion. *See Ortiz*, 670 N.W.2d at 792. Furthermore, any successive postconviction motion filed by Parnell would also be barred by Nebraska's statute of limitations. The court cannot reach the merits of these claims unless Parnell demonstrates cause and prejudice excusing the default.

## 2. Subpart (5)

In Claim Two, Subpart (5), Parnell asserts that he was denied effective assistance of counsel because trial counsel failed to challenge the admission of the "altered" knife evidence. (Filing No. 1 at CM/ECF p. 11.) Respondent asserts, and the court agrees, that Parnell presented this claim in one complete round in Nebraska's state courts. (*See* Filing No. 10-4 at CM/ECF p. 7; Filing No. 10-13 at CM/ECF p. 5.) In rejecting the claim on postconviction appeal, the Nebraska Court of Appeals wrote:

> In connection with his second assignment of error, Parnell also argues that his trial counsel was ineffective for failing "to even object to the illegal search and to move to suppress the knife that was found by the victim . . . in the attic." Brief for appellant at 18. The district court rejected this claim raised by Parnell in his postconviction motion, finding Parnell would not have had standing to challenge the search because the residence in question belonged to the victim, who gave law enforcement permission to enter the premises. We agree.
>
> Before a party may challenge a search without a warrant, he or she must have standing in a legal controversy. *State v. Abu-Serieh*, 25 Neb. App. 462, 908 N.W.2d 86 (2018). "Standing" means that a person has a sufficient legally protectable interest which may be affected in a justiciable controversy, entitling that person to judicial resolution of the controversy. *Id.* A "standing" analysis in the context of search and seizure is nothing more than an inquiry into whether the disputed search and seizure has infringed an interest of the defendant in violation of the protection afforded by the Fourth Amendment. *State v. Abu-Serieh, supra*.

Ordinarily, two inquiries are required to determine whether an individual may make a challenge under the Fourth Amendment. *State v. Abu-Serieh, supra.* First, an individual must have exhibited an actual (subjective) expectation of privacy, and second, the expectation must be one that society is prepared to recognize as reasonable. *Id.* An individual may demonstrate infringement of his or her own legitimate expectation of privacy by showing that he owned the premises or that he occupied them and had dominion and control over them based on permission from the owner. *State v. McMillion*, 23 Neb. App. 687, 875 N.W.2d 877 (2016). Generally, a defendant must establish that he or she was legitimately on premises where a search occurs. See *State v. Van Ackeren*, 200 Neb. 812, 265 N.W.2d 675 (1978). Also, a warrantless search of a house may be justified when the police have obtained the consent to search from a party who possessed common authority over, or other sufficient relationship to, the premises sought to be inspected. *State v. Bowen*, 232 Neb. 725, 442 N.W.2d 209 (1989).

Here the knife was found in the home of the victim, who gave police permission to enter the premises. We agree with the district court that Parnell did not have standing to challenge the search and thus, any motion to suppress with respect to the knife would have been unsuccessful. Defense counsel is not ineffective for failing to raise an argument that has no merit. *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018). Because this claim is affirmatively refuted by the record, it does not require an evidentiary hearing.

(Filing No. 10-4 at CM/ECF p. 7.)

The United States Supreme Court has held that "'capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place.' A subjective expectation of privacy is legitimate if it is 'one that society is prepared to recognize as 'reasonable.'" *Minnesota v. Olson*, 495 U.S. 91, 95-96 (1990) (citing *Rakas v. Illinois*, 439 U.S. 128, 143-44 (1978); *Katz v. United States*, 389 U.S. 347, 361 (1967)). Generally, an individual who is wrongfully on premises where a search occurs does not have standing to challenge a search and seizure. *See Rakas*, 439 U.S. at 143-44 & n.12 ("[A] 'legitimate' expectation of

privacy by definition means more than a subjective expectation of not being discovered. A burglar plying his trade in a summer cabin during the off season may have a thoroughly justified subjective expectation of privacy, but it is not one which the law recognizes as 'legitimate.' His presence . . . is 'wrongful'; his expectation is not 'one that society is prepared to recognize as 'reasonable.'" (citations omitted)).

The Nebraska Court of Appeals reviewed all the evidence and determined, based on *Strickland*, that trial counsel was not ineffective for filing a meritless motion to suppress the evidence of the knife. The knife was found in the home of the victim, who gave police permission to enter the premises. Parnell was not legitimately at the residence, and he had no reasonable expectation of privacy in it. Thus, he had no standing to challenge the search. Parnell did not argue, much less establish, that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court. Therefore, Claim Two, Subpart (5) is not a basis for habeas corpus relief.

### 3. Subpart (8)

In Claim Two, Subpart (8), Parnell asserts that he was denied effective assistance of counsel because trial counsel failed to call Officer Passo and Officer Joe Choquette to testify at trial. (Filing No. 1 at CM/ECF pp. 12-13.)

### a. Officer Passo

In its opinion affirming the state district court's denial of postconviction relief, the Nebraska Court of Appeals considered and rejected Parnell's ineffective assistance of counsel argument related to Officer Passo. The court wrote:

> In his postconviction motion, Parnell asserted that Passo would have testified that he saw Parnell smoking a cigarette and that this testimony

"would have added more reasonable doubt to the prosecution[']s case that [Parnell] had a knife in one hand and gun in the other." However, at trial, Parnell's attorney cross-examined the victim in detail regarding his claim that Parnell held both a knife and a gun at the same time. The jury acquitted Parnell of the use of a deadly weapon (firearm) to commit a felony charges, apparently rejecting the victim's assertion that Parnell held a firearm. The rejection of this assertion does not preclude the possibility that Parnell used a knife during the events in question. Any testimony by Passo that Parnell held a cigarette does not automatically conflict with the victim's testimony that Parnell held him at knife point. Parnell cannot show prejudice from his attorney's failure to present the proposed testimony from Passo.

([Filing No. 10-4 at CM/ECF p. 6](#).)

Parnell did not rebut the Nebraska Court of Appeals' findings of fact on this issue, nor did he make any effort to do so. As stated previously in this order, the court must grant substantial deference to the Nebraska Court of Appeals' findings of fact and conclusions of law. The Nebraska Court of Appeals reviewed all the evidence and determined, based on *Strickland*, that Parnell was not prejudiced by trial counsel's failure to call Officer Passo to testify at trial. Parnell did not argue, much less establish, that the Nebraska Court of Appeals' decision on this issue was based on an unreasonable determination of the facts in light of the evidence or that it was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court.

### b. Officer Choquette

The Nebraska Court of Appeals declined to consider Parnell's claim that trial counsel was ineffective for failing to call Officer Choquette as a potential witness, because Parnell's postconviction motion did not include specific allegations as to the testimony Officer Choquette would have given if called at trial. ([Filing No. 10-4 at CM/ECF p. 7](#) (citing *State v. Foster*, 300 Neb. 883, 916 N.W.2d 562 (2018), *disapproved on other grounds*, *State v. Allen*, 301 Neb. 560, 919 N.W.2d 500 (2018).) The Nebraska Court of Appeals' decision to refuse to consider claims that

24

alleged only conclusions of fact or law was based on a firmly established state procedural rule. That is, in Nebraska, if a postconviction motion alleges only conclusions of fact or law, then the court is not required to grant an evidentiary hearing. *State v. Dragon*, 843 N.W.2d 618, 623 (Neb. 2014) ("If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing"); *see also State v. Fox*, 840 N.W.2d 479, 485 (Neb. 2013); *State v. Baker*, 837 N.W.2d 91, 96 (Neb. 2013); *State v. Marks*, 835 N.W.2d 656, 661 (Neb. 2013); *State v. Branch*, 834 N.W.2d 604, 607 (Neb. 2013). Therefore, this portion of Claim Two, Subpart (8) is procedurally defaulted pursuant to an independent and adequate state procedural rule, and this court is barred from addressing its merits. *See Hunt v. Houston*, 563 F.3d 695, 703 (8th Cir. 2009) ("Federal courts generally will not review claims that a state court has refused to consider because of the petitioner's failure to satisfy a state procedural requirement"); *Shaddy v. Clarke*, 890 F.2d 1016, 1018 (8th Cir. 1989) ("[O]nly if the state court issues a 'plain statement' that it is rejecting petitioner's federal claim on state procedural grounds will federal habeas courts be precluded from reaching the merits of the claim."); *Sing v. Frakes*, No. 8:15CV134, 2016 WL 3248244, at *5 (D. Neb. June 13, 2016) (the Nebraska Supreme Court's decision to refuse to consider claims that were insufficiently alleged in the postconviction motion was based on a firmly established state procedural rule, and therefore the claims were procedurally defaulted); *Ildefonso v. Gage*, No. 4:13CV3110, 2016 WL 1092468, at *9 (D. Neb. Mar. 21, 2016), *certificate of appealability denied* (Sept. 15, 2016) (the Nebraska Supreme Court's decision to refuse to consider claims that alleged only conclusions of fact or law was based on a firmly established state procedural rule; in Nebraska, if a postconviction motion alleges only conclusions of fact or law, then the court is not required to grant an evidentiary hearing). This claim is now procedurally defaulted, not unexhausted, because the Nebraska courts would not entertain a successive postconviction motion based on this claim. Furthermore, any successive postconviction motion filed by Parnell would also be barred by Nebraska's statute of limitations. The court cannot reach the merits of this claim unless Parnell demonstrates cause and prejudice excusing the default.

### C.  Claim Three

Claim Three consists of multiple subparts alleging ineffective assistance of appellate counsel. (Filing No. 1 at CM/ECF pp. 13-18.) In its opinion affirming the district court's denial of postconviction relief, the Nebraska Court of Appeals declined to consider the merits of Parnell's ineffective assistance of appellate counsel claims because Parnell's "generalized argument" was "vague and not specific enough to advise [the] court of the issues to be considered on appeal." (Filing No. 10-4 at CM/ECF p. 12 (citing *State v. Dill*, 300 Neb. 344, 913 N.W.2d 470 (2018) (alleged error must be both specifically assigned and specifically argued in brief of party asserting error to be considered by appellate court); *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014) (generalized and vague assignment of error that does not advise appellate court of issue submitted for decision will not be considered).) Therefore, Claim Three is procedurally defaulted pursuant to an independent and adequate state procedural rule.[3] *See Hunt*, at 703; *Shaddy*, 890 F.2d at 1018; *Sing*, 2016 WL 3248244, at *5; *Ildefonso*, 2016 WL 1092468, at *9. Parnell cannot raise the issues in Claim Three in a successive postconviction motion. *See Ortiz*, 670 N.W.2d at 792. Furthermore, any successive postconviction motion filed by Parnell would also be barred by Nebraska's statute of limitations.  The court cannot reach the merits of Claim Three unless Parnell demonstrates cause and prejudice excusing the default.

### D.  Claim Four

In Claim Four, Parnell alleges various prosecutorial misconduct claims. (Filing No. 1 at CM/ECF pp. 20-23.) In affirming the district court's denial of

---

[3] The court also notes that Parnell did not raise Claim Three in his postconviction appeal petition for further review to the Nebraska Supreme Court. (*See* Filing No. 10-13.) Thus, even if the Nebraska Court of Appeals had addressed the merits of Parnell's ineffective assistance of counsel claims, they would be procedurally defaulted because Parnell did not present them in one complete round in Nebraska's state courts.

postconviction relief, the Nebraska Court of Appeals specifically relied on Nebraska law to conclude that these claims were "procedurally barred because they could have been brought on direct appeal." (Filing No. 10-4 at CM/ECF p. 12 (citing *State v. Stricklin*, 300 Neb. 794, 916 N.W.2d 413 (2018).) In light of the Nebraska Court of Appeals' plain statement that it was rejecting Parnell's prosecutorial misconduct claims on independent and adequate state procedural grounds, this court is barred from addressing the merits of Claim Four. *See Shaddy*, 890 F.2d at 1018. Stated another way, the prosecutorial misconduct claims are procedurally defaulted, and the court cannot reach the merits of these claims unless Parnell demonstrates cause and prejudice excusing the default.

### E.  Cause and Prejudice

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law, or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. Although there is no precise definition of what constitutes cause and prejudice, "[a] cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner." *Bell v. Attorney Gen. of the State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) (citing *Coleman*, 501 U.S. at 753).

The court has carefully reviewed the record in this matter. Parnell does not argue, much less establish, cause and prejudice to excuse his default of Claim Two and Claim Three. Accordingly, Parnell is not entitled to relief on these claims. Liberally construed, Parnell argues that his failure to raise Claim Four on direct appeal is a result of his appellate counsel's ineffectiveness. (Filing No. 1 at CM/ECF p. 20.) While ineffective assistance of counsel may constitute "cause" in some circumstances, "[n]ot just any deficiency in counsel's performance will do." *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000). Rather, "the assistance must have been so ineffective as to violate the United States Constitution. In other words, ineffective assistance of counsel adequate to establish cause for the procedural

default of some other constitutional claim is itself an independent constitutional claim" which must be presented to the state courts. *Id.* (citation omitted); *see also Leggins v. Lockhart*, 822 F.2d 764, 768 n.5 (8th Cir. 1987) ("A claim of ineffective assistance of counsel must be presented to the state court as an independent claim before it may be used to establish cause for procedural default or denominated as a ground for habeas relief."). An ineffective assistance of counsel claim asserted as cause for another procedurally defaulted federal claim can itself be procedurally defaulted, and, unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim. *Edwards*, 529 U.S. at 451-53. The court has determined above that Parnell's ineffective assistance of appellate counsel claims in Claim Three are procedurally defaulted and that Parnell has not demonstrated cause or prejudice for the default. Therefore, Parnell cannot rely on those ineffective assistance of appellate counsel claims to overcome the procedural default of Claim Four. *See Edwards*, 529 U.S. at 451-53.

## F. Actual Innocence

To obtain review of an otherwise procedurally barred claim based on actual innocence, a petitioner must satisfy a two-part test: (1) the "allegations of constitutional error must be supported with new reliable evidence not available at trial"; and (2) "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Nash v. Russell*, 807 F.3d 892, 899 (8th Cir. 2015) (citing *Schlup*, 513 U.S. at 327-28); *accord Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001). Actual innocence means factual innocence, not legal innocence or legal insufficiency. *Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993). Here, Parnell has not produced evidence in support of a claim that he is actually innocent. He does nothing more than rehash his insufficiency of the evidence arguments presented on direct appeal. For these reasons, the court finds Parnell has not satisfied the requisite elements to excuse his procedurally defaulted claims through any "gateway" claim of actual innocence.

## V. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b)(1). The standards for certificates (1) where the district court reaches the merits or (2) where the district court rules on procedural grounds are set forth in *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). The court has applied the appropriate standard and determined that Parnell is not entitled to a certificate of appealability.

IT IS THERFORE ORDERED that the Petition for Writ of Habeas Corpus (filing no. 1) is denied and dismissed with prejudice. No certificate of appealability has been or will be issued. Judgment will be issued by separate document.

Dated this 19th day of December, 2019.

BY THE COURT:

*Richard G. Kopf*

Senior United States District Judge